UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

G. DOE II AND K. DOE,                    :
individually and as parents and          :
natural guardians of G. DOE III,         :
                                         :
          Plaintiffs,                    :
                                         :
     - against -                         :
                                         :
LUZERNE COUNTY,                          :
PENNSYLVANIA;                            :
LUZERNE COUNTY CHILDREN                  :
& YOUTH SERVICES;                        :
OLGA ARAUJO;                             :        NO.
REBECCA GLASSMAN;                        :
ROBIN RITSICK;                           :
KELLY SILVER;                            :
DONALD PRANZONI;                         :        JURY TRIAL DEMANDED
MARY PRANZONI;                           :
                                         :
          Defendants.                    :

## AMENDED COMPLAINT

Plaintiffs G. Doe II and K. Doe, individually and as parents and

natural guardians of G. Doe III, by their attorneys, Barry H. Dyller, Esq. and The

Dyller Law Firm, for their Amended Complaint allege as follows:

## JURISDICTION AND VENUE

1.  This action arises out of violations of 42 U.S.C. § 1983, and the

United States Constitution.  This Court has jurisdiction pursuant to 42 U.S.C. §§

1331, 1332, 1343, and 1367.  Venue is proper in this judicial district under 28

U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise

to the claim occurred in this judicial district.  The amount in controversy exceeds

$75,000, exclusive of interest and costs.

<u>THE PARTIES</u>

2.  G. Doe II and K. Doe are the parents and natural guardians of G.

Doe III.  The pseudonym "Doe" is used herein to protect the privacy and well-

being of the plaintiffs in this very delicate matter.  The true identity of the

plaintiffs is well-known to the defendants.  All plaintiffs are residents of Hudson

County, New Jersey.

3.  Defendant Luzerne County, Pennsylvania ("Luzerne County") is a

municipality in the Commonwealth of Pennsylvania.  Luzerne County Children &

Youth Services ("Luzerne County CYS") is a governmental organization operated

by Luzerne County.  Luzerne County CYS's function is to protect children whose

parents are abusive, or cannot or will not properly care for them.

4.  Defendant Olga Araujo ("Araujo") is and at all relevant times was

a case worker employed by Luzerne County and Luzerne County CYS.

5. Defendant Rebecca Glassman ("Glassman") is and at all relevant times was a case worker employed by Luzerne County and Luzerne County CYS.

6. Defendant Robin Ritsick ("Ritsick") was a case worker employed by Luzerne County CYS. Ritsick is now a supervisor with Luzerne County CYS.

7. Defendant Kelly Silver ("Silver") is and at all relevant times was a case worker employed by Luzerne County and Luzerne County CYS.

8. Defendants Donald Pranzoni ("Mr. Pranzoni") and Mary Pranzoni ("Ms. Pranzoni") were foster parents for non-party N.G., referred to below. As foster parents being paid by Luzerne County and Luzerne County CYS, Mr. and Mrs. Pranzoni acted under color of state law.

9. Upon information and belief, all defendants are residents of the Commonwealth of Pennsylvania.

<u>BACKGROUND</u>

<u>N.G. and A.G.</u>

10. Non-parties N.G. and A.G. are children. N.G. is male; A.G. is female. Because N.G.'s and A.G.'s father was sexually abusive to them, and their mother was unable to provide proper care for them, legal custody for N.G. and A.G. was vested in Luzerne County CYS.

3

11.  In approximately May, 1999, Luzerne County CYS gained legal custody of N.G. and A.G.  Luzerne County CYS, while retaining legal custody of N.G. and A.G., placed N.G. and A.G. in foster care with Mr. and Mrs. Pranzoni.

12.  At various times prior to and during the events described below, defendants Araujo, Glassman, Ritsick and Silver were the Luzerne County CYS caseworkers involved with N.G. and A.G.

N.G.'s Sexual Abuse Problem

13.  N.G., who had been a victim of sexual abuse, became a sexual abuser and predator of other children.  This fact was well-known to all of the defendants.

The Plaintiffs' Home and Family

14.  G. Doe II and K. Doe have two children of their own.  G. Doe II and K. Doe have a stable and loving home.

15.  G. Doe II and K. Doe are related to N.G. and A.G., and are godparents to A.G.  In June, 1999, G. Doe II and K. Doe learned that their relatives N.G. and A.G. were in foster care, with non-relatives.  G. Doe II and K. Doe decided that they could provide a loving home for N.G. and A.G., and

therefore contacted Glassman and Luzerne County CYS.  G. Doe II and K. Doe

explained their desire to take care of N.G. and A.G.

      16.  It was agreed that G. Doe II and K. Doe could provide an

appropriate and permanent home for N.G. and A.G.  First, however, background

checks had to be conducted to determine if G. Doe II or K. Doe had any

undisclosed matters which would make them inappropriate persons to care for

N.G. or A.G.

      17.  G. Doe II and K. Doe did all paperwork, and cooperated in all

ways, to have it officially determined that they were appropriate persons to care

for N.G. and A.G.  This included extensive contacts between G. Doe II and K.

Doe, the defendants, and the New Jersey Division of Youth and Family Services

("DYFS").  All agencies and checks confirmed that the Doe home was appropriate

for N.G. and A.G.

The Conspiracy

      18.  All of the defendants knew that N.G. was a sexual predator, and

had previously forced other children to engage in sexual activity.  The defendants

conspired among themselves and others not to disclose to G. Doe II or K. Doe or

their family the sexual acts that N.G. had engaged in with other children, or that

N.G. was a sexual predator.

19.  A purpose of defendants' conspiracy was not to "sabotage"

N.G.'s chances of being adopted.

N.G. and A.G. in the Doe Household

20.  On November 17, 2000, the transfer of N.G. and A.G. to the Doe

Household took place.  Araujo was present, and presided over the transfer.  Araujo

gave information on schools, doctors, dentists and psychologists.  Araujo did not

inform G. Doe II or K. Doe that N.G. was a sexual predator.

21.  The Doe Family was thrilled to have N.G. and A.G. in their

household and as part of their family.

22.  At the time G. Doe III and N.G. were eight and seven years old,

respectively, but N.G. was physically bigger and stronger.

The Rapes

23.  N.G. began anally raping G. Doe III.  N.G. successfully raped G.

Doe III at least ten times.  N.G. also engaged in various other forms of sexual

abuse of G. Doe III.  N.G. also attempted to orally rape G. Doe III.

6

24. N.G. succeeded in these rapes because of his bigger size than G. Doe III. N.G. used physical force and threats to effect the rapes.

25. N.G. also told G. Doe III that he was removed from his parents because his father did that to him. N.G. told G. Doe III that if he told anyone, G. Doe III would also be removed from his parents, and "I will have your Mom all to myself." This frightened G. Doe III tremendously.

26. On or around January 18 and 19, 2001, G. Doe II and K. Doe learned that N.G. had been raping their son. G. Doe II and K. Doe promptly had N.G. removed from their home.

Damages

27. G. Doe III suffered and continues to suffer severe mental and emotional damage, and also suffered physical harm.

28. All plaintiffs suffered and will suffer in the future economic harm.

29. Defendants G. Doe II and K. Doe suffered and continue to suffer severe mental and emotional damage, and damage to their family.

The Policies of Luzerne County and of Luzerne County CYS

      30. Luzerne County and Luzerne County CYS has a policy or custom of doing whatever it takes, including non-disclosure of information to prospective adoptive parents, to promote adoption of children in their custody.

      31. Luzerne County and Luzerne County CYS has a policy and/or custom of providing inadequate training to their caseworkers, including inadequate training about disclosures that should be made to prospective foster parents or adoptive parents.

      32.  Luzerne County and Luzerne County CYS has a policy and/or custom of providing inadequate supervision to their caseworkers, including inadequate training about disclosures that should be made to prospective foster parents or adoptive parents.

      33.  Luzerne County has a policy of providing inadequate resources, including inadequate staff, to Luzerne County CYS.

      34.  Each of these policies and/or customs caused the events discussed herein.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983)

35. Plaintiffs repeat and reallege paragraphs 1 through 34 as if fully repeated herein.

36. All defendants acted under color of state law.

37. Defendants Araujo, Glassman, Ritsick, Silver, Mr. Pranzoni and Mrs. Pranzoni conspired with each other and with others to withhold from the plaintiffs the fact that they were placing a sexual predator in the plaintiffs' household to live with them. Defendants Araujo Glassman, Ritsick and Silver carried out this conspiracy, by actually placing a sexual predator in the plaintiffs' household to live with them.

38. Defendants' conduct and conspiracy therefore was a deprivation, under color of state law, of rights guaranteed to the plaintiffs under the Fourteenth Amendment to the United States Constitution.

39. As a result of defendants Araujo's, Glassman's, Ritsick's, Silver's, Mr. Pranzoni's and Mrs. Pranzoni's violations of the plaintiffs' Constitutional rights, plaintiffs suffered and continue to suffer substantial injuries and damage.

## SECOND CLAIM FOR RELIEF
(42 U.S.C. § 1983)

40.  Plaintiffs repeat and reallege paragraphs 1 through 39 as if fully repeated herein.

41.  Defendants Luzerne County's and Luzerne County CYS's policies and customs violated plaintiffs' rights guaranteed under the Fourteenth Amendment to the United States Constitution.

42.  As a result of defendants Luzerne County's and Luzerne County CYS's violations of the plaintiffs' Constitutional rights, plaintiffs suffered and continue to suffer substantial injuries and damage.

## COUNT THREE
(Negligence)

43.  Plaintiffs repeat and reallege paragraphs 1 through 42 as if fully repeated herein.

44.  Mr. Pranzoni and Mrs. Pranzoni owed a duty of care to the plaintiffs.  That duty of care included the duty not to put a person in their household who Mr. Pranzoni and Mrs. Pranzoni knew to be a danger to children in the plaintiffs' household.  That duty also included warning the plaintiffs of the

danger those in their household faced if N.G. was placed in the plaintiffs' household.

45.  Mr. Pranzoni and Mrs. Pranzoni breached the duty they owed to the plaintiffs.

46.  As a result of their breach of the duty Mr. Pranzoni and Mrs. Pranzoni owed to the plaintiffs, plaintiffs suffered substantial injuries.

WHEREFORE, Plaintiffs demand judgment as follows:

A.  An amount to be determined at trial, including punitive damages against defendants Araujo, Glassman, Ritsick, Silver, Mr. Pranzoni and Mrs. Pranzoni, plus interest;

B.  An amount to be determined at trial against defendants Luzerne County, Pennsylvania, and Luzerne County Children and Youth Services, plus interest;

C.  For plaintiffs' attorneys' fees, pursuant to 42 U.S.C. § 1988;

D.  For the costs and disbursements incurred in this action; and

E.  For such other and further relief as the Court deems just and

proper.

THE DYLLER LAW FIRM

/s/ Barry H. Dyller
Attorneys for Plaintiffs
PA Bar: 65084
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

12