**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| G. DOE AND K. DOE | : | |
| Plaintiffs, | : | |
| v. | : | |
| LUZERNE COUNTY, et al., | : | CIVIL ACTION |
| Defendants. | : | No. 3: 04-CV-01637 |

**BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS LUZERNE COUNTY, LUZERNE COUNTY CHILDREN & YOUTH
SERVICES, OLGA ARAUJO, REBECCA GLASSMAN AND ROBIN RITSICK**

OF COUNSEL:

**ELLIOTT GREENLEAF
   & SIEDZIKOWSKI, P.C.**


**JOHN G. DEAN**
**PA 76168**
**PNC Bank Bldg, Suite 202**
**201 Penn Ave.**
**Scranton, PA 18501**
**570-346-7569**
**jgd@elliottgreenleaf.com**

**TIMOTHY T. MYERS**
**PA46959**
**DEBORAH H. SIMON**
**PA 32459**
**Union Meeting Corporate Center V**
**925 Harvest Drive**
**Blue Bell, PA 19422**
**215-977-1000**
**ttm@elliottgreenleaf.com**


**DATED: August 29, 2008**

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     PROCEDURAL HISTORY..................................................................................2

III.    STATEMENT OF THE FACTS ..........................................................................4

IV.     STATEMENT OF QUESTIONS INVOLVED....................................................4

V.      ARGUMENT .......................................................................................................4

        A.      SUMMARY JUDGMENT STANDARDS REQUIRE DISMISSAL ........................5

        B.      DEFENDANTS FOLLOWED PROPER PROCEDURE TO
                IMPLEMENT THE FAMILY'S DIRECTIVES .......................................7

        C.      COUNT II MUST BE DISMISSED BECAUSE DEFENDANTS
                ARE NOT LIABLE UNDER §1983 ........................................................10

                1.      LCCYS Did Not Violate Any Constitutional Rights Of
                        Plaintiffs...............................................................................11

                2.      LCCYS Did Not Violate Any Standard Of Care Applicable
                        To Its Actions In Effectuating The Transfer And Cannot Be
                        Liable Under The State Created Danger Theory ...........................13

                3.      Summary Judgment Must Be Entered Because Plaintiffs
                        Fail To Establish An Affirmative Act............................................18

                4.      LCCYS Did Not proximately "Cause" The Alleged Sexual
                        Acts .......................................................................................19

        D.      SUMMARY JUDGMENT MUST BE ENTERED ON COUNT I
                FOR CONSPIRACY .............................................................................22

        E.      SUMMARY JUDGMENT MUST BE GRANTED ON
                PLAINTIFFS' *MONELL* CLAIMS UNDER §1983 BECAUSE
                PLAINTIFFS HAVE FAILED TO SHOW ANY POLICY OR
                CUSTOM..............................................................................................24

        F.      SUMMARY JUDGMENT MUST BE ENTERED BECAUSE
                LCCYS IS IMMUNE ...........................................................................26

                1.      LCCYS Is Entitled To Absolute Immunity ...................................26

                2.      LCCYS Is Entitled To Qualified Immunity...................................27

        G.      COUNT THREE MUST BE DISMISSED AGAINST LCCYS .............................30

H.    THE STATUTE OF LIMITATIONS BARS ALL CLAIMS BY
      K.DOE AND G.DOE...............................................................................................30

VI.  CONCLUSION...........................................................................................................31

## <u>TABLE OF CITATIONS</u>

### *Cases*

*Anderson v. Davila*, 125 F.3d 148 (3d Cir.1997)..........................................................22

*Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 12 F.Supp.2d 391 (M.D.Pa.1998) .....................6

*Baker v. Monroe Township,* 50 F.3d 1186 (3dCir.1995) ...............................................25

*Beck v. Prupis*, 529 U.S. 494 (U.S.,2000) ...............................................................24

*Behm v. Luzerne County Children & Youth*, 172 F.Supp.2d 575 (M.D.Pa.,2001) ......................28

*Bennett v. City of Philadelphia*, 499 F.3d 281 (3dCir.,2007) .....................................3, 4, 5, 14, 17

*Blackhawk v. Com. of Pa.*, 225 F.Supp.2d 465 (M.D.Pa.,2002)....................................30

*Blum v. Yaretsky*, 457 U.S. 991 (1982)...............................................................18

*Boykin v. Bloomsburg Univ.*, 893 F.Supp. 378 (M.D.Pa.1995), aff'd, 91 F.3d 122
  (3dCir.1996)...............................................................................11

*Breslin v. City and County of Philadelphia*, 92 F.R.D. 764 (E.D.Pa.,1981) ...............................30

*Briscoe v. LaHue*, 460 U.S. 325 (1983)...............................................................10

*Burella v. City of Philadelphia*, 501 F.3d 134 (3dCir.,2007) .......................................13

*Carey v. City of Wilkes-Barre*, 2006 WL 4451561 (M.D.Pa.,2006)....................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................6, 7

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) ....................................30

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)...............................................25

*Collins v. Harker Heights*, 503 U.S. 115 (1992) ..................................................13, 14

*Colon v. Colonial Intermediate Unit*, 443 F.Supp.2d 659 (M.D.Pa.,2006)...........................28

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)...........................................13, 14

*Currier v. Doran*, 242 F.3d 905 (10thCir.,2001) ..................................................13

*Defeo v. Sill,* 810 F. Supp. 648 (E.D.Pa.,1993) ..................................................24

*DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189 (1989).............................13

*Egolf v. Witmer*, 526 F.3d 104, 2008 WL 2151823 (3dCir.,2008) ....................................29

*Ernst v. C&YS of Chester County*, 108 F.3d 486 (3dCir.,1997).............................10, 27

*Fioriglio v. City of Atlantic City*, 996 F. Supp. 379 (D.N.J.,1998)...............................24

*Freeman v. Murray*, 163 F.Supp.2d 478 (M.D.Pa.,2001)...........................................24

*Gabrielle v. City of Plain*, 202 F.3d 741 (5th Cir., 2000).........................................25

*Gay v. Shannon*, 2005 WL 756731 (E.D.Pa.,2005)..................................................22

*Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987) ..................................................30

*Graham v. Connor*, 490 U.S. 386 (1989) ..............................................................10

*Harris v. Lehigh County Office of C&Y Serv.*, 418 F.Supp. 643 (E.D.Pa.,2005) .........................13

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...................................................................27

*Jackson v. County of Wayne*, 2006 WL 229181 (M.D.Pa.,2006) ...................................13

*Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)..............................................25

*Jonker v. Kelley*, 268 F.Supp.2d 81 (D.Mass.,2003) ......................................................31

*K.J. v. Div. of Y&Fam. Serv.*, 363 F.Supp.2d 728 (D.N.J.,2005) ........................................13

*Kaucher v. County of Bucks*, 455 F.3d 418 (3dCir.,2006) .................................................19

*Kneipp v. Tedder*, 95 F.3d 1199 (3dCir.,1996)...................................................20, 21

*Larsen v. Senate of Com. of Pa.*, 154 F.3d 82 (3dCir.,1998)............................................29

*Levin v. Upper Makefield Township, Bucks County, Pa.*, 90 Fed.Appx. 653, 2004
   WL 449189 (3dCir.,2004).............................................................................24

*Lyon v. Campbell*, 26 Fed.Appx. 183, 2001 WL 1658895 (4thCir.,2004) ...............................23

*Martinez v. California*, 444 U.S. 277 (1980).......................................................11

*Marvasi v. Shorty*, 70 F.R.D. 14 (E.D.Pa.,1976) ......................................................30

*Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574 (1986) .......................................6

*Meyers v. Contra Costa County Dep't of Soc. Serv.*, 812 F.3d 1154 (9th Cir. 1987) ...................13

*Miller v. City of Phila.*, 174 F.3d 368 (3dCir.,1999) ...................................................26

*Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978).......................25

*Moore v. Lehman*, 940 F. Supp. 704 (M.D.Pa.1996)........................................................7

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d.Cir.1997) ...............................10, 19, 20

*Nicini v. Morra*, 212 F.3d 798 (3dCir.,2000)................................................5, 8, 11, 14

*Ormsby v. Luzerne County Dep't of Pub. Welf.*, 149 Fed.Appx. 60, 2005 WL
   218475 (3dCir.,2005)................................................................................31

*Ortiz v. NJ Div. of Y&F*S, 2008 WL 1767019 (D.N.J.,2008) ..........................................17

*Panayotides v. Rabenold*, 35 F.Supp.2d 411 (E.D.Pa.1999) ..........................................22

*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999) ....................................................24

*Pardue v. Gray*, 136 Fed.Appx. 529, 2005 WL 1503917 (3dCir.,2005).................................24

*Pearl v. City of Long Beach*, 296 F.3d 76 (2dCir.,2002)..................................................31

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).....................................................25

*Phillips v. County of Allegheny*, 515 F.3d 224 (3dCir.,2008)......................................3, 11, 13, 19

*Piecknick v. Com. of Pa.*, 36 F.3d 1250 (3d.Cir. 1994) .................................................10

iv

*Puricelli v. Houston*, 2000 WL 760522 (E.D.Pa.,2000) ..................................................29

*Rauser v. Horn*, 241 F.3d 330 (3d Cir.2001) ...............................................................22

*Rel. Z.H. v. Olivia*, 226 F.3d 198 (3dCir.,2000), c*ert. denied Hood v. Medford Twp. Bd. of Education,* 533 U.S. 915 (2001) ......................................................30

*Rodriguez-Garcia v. Caguas*, 354 F.3d 91 (1stCir.,2004) ...........................................31

*Roginski v. Time Warner Interactive*, 967 F. Supp. 821 (M.D.Pa.1997) ......................6

*Sanders v. City of Philadelphia*, 513 F.Supp.2d 439 (E.D.Pa.,2007) ..........................16

*Sanford v. Stiles*, 456 F.3d 298 (3dCir.,2006) ..............................................18, 19, 20

*Saucier v. Katz*, 533 U.S. 194 (2001) .........................................................................26

*Savard v. Rhode Island*, 338 F.3d 23 (1stCir.,2003) ...................................................29

*Schieber v. City of Philadelphia*, 320 F.3d 409 (3dCir.,2003) ...............................14, 16

*Schneck v. Saucon Valley School District*, 340 F.Supp.2d 558 (E.D.Pa.,2004) ...........31

*Scott v. Harris*, __ U.S. __, 126 S.Ct. 1769 (2007) ....................................................29

*Simmons v. City of Philadelphia*, 947 F.2d 1042 (3dCir.1991), *cert.denied*, 503 U.S. 985 (1992)........................................................................................................25

*State v. Tonelli*,  2008 WL 2152528 (Iowa,2008)........................................................24

*Stone v. Brennan*, 2007 WL1199376 (E.D.Pa.,2007)...................................................13

*U.S. v. Bazemore*, 41 F.3d 1431 (11th Cir. 1994)........................................................23

*Wallace v. Kato*, __ U.S. __, 127 S.Ct. 1091 (2007) ..............................................30, 31

*Wesley v. Dombrowski*, 2004WL1465650 (E.D.Pa.,2004).......................................10, 11

*Whittington v. Vaughn*, 289 F. Supp. 2d 621 (E.D.Pa.,2003) ......................................30

*Williams v. Borough of West Chester*, 891 F.2d 458 (3dCir.,1984) .............................11

*Williams v. Consovoy*, 453 F.3d 173 (3dCir.,2006).....................................................27

*Wilson v. Garcia*, 471 U.S. 261 (1985) .......................................................................30

*Young v. City of Philadelphia*, 1996WL287315 (E.D.Pa.,1996)..................................25

## *Statutes*

42 U.S.C. § 670................................................................................................................ 7

42 U.S.C. § 671(a)(15)(C) ............................................................................................... 7

42 U.S.C. § 6755.............................................................................................................. 8

42 U.S.C. §1983............................................................................................................. 10

42 U.S.C. §5102(g) ........................................................................................................ 23

23 Pa.C.S. §6331 .................................................................................................. 23

23 Pa.C.S.A. §§ 6335 ..................................................................................... 15, 30

42 Pa.C.S. §9795.1 ............................................................................................... 23

42 Pa.C.S.A. §§6332 .............................................................................................. 8

42 Pa.C.S.A. §5574 ............................................................................................... 31

55 Pa. Code §3130.67 ......................................................................................... 8, 9

62 Pa.C.S.A. § 1303 .............................................................................................. 8

***Rules***

Fed.R.Civ.P. 56(c) ................................................................................................. 6

FRE 801(d)(2)(E) .................................................................................................. 23

Defendants Luzerne County, Pennsylvania, Luzerne County Children & Youth Services, Olga Araujo, Rebecca Glassman and Robin Ritsick (collectively, "LCCYS") hereby submit this Brief in support of their Motion For Summary Judgment.

## I.    __INTRODUCTION__

Plaintiff G.Doe,III alleges that he incurred psychological and emotional damages as a result of being "raped" by N.G. approximately fifteen times, during a six (6) or seven (7) week period from some time after Thanksgiving, November 23, 2000 to January 18, 2001, after Plaintiff G.Doe,III's parents petitioned the court and obtained legal custody of N.G.  Plaintiff G.Doe,III was nine (9) years old at the time, and the alleged rapist, his younger relative, N.G., was seven (7) years old at the time.  Plaintiffs allege that the Luzerne County Defendants knew or should have known that N.G. would sexually abuse G.Doe,III, and never should have allowed Plaintiff K.Doe and G.Doe to seek and obtain custody of N.G.

There is no cognizable or admissible evidence that any sexual abuse even occurred, other than the sole testimony of the minor, Plaintiff G.Doe,III.  All of the other evidence submitted by Plaintiffs are hearsay, and often consist of multiple layers of hearsay.  No one saw anything happen, including G.Doe,III's bigger and older brother, who was allegedly a few feet away in the same room during the alleged "rapes."

The Plaintiffs' family physician, who fully examined Plaintiff G.Doe,III in the middle of the six week period, December 8, 2000, and again on the day that the alleged rapes were reported on January 19, 2001, found no physical evidence of any sexual abuse.  The New Jersey DYFS concluded that the allegations were "unsubstantiated."  Additionally, the instances of alleged sexual abuse changed dramatically from G.Doe,III's initial description of three (3) incidents of improper touching, which he reported on January 19, 2001, to approximately fifteen (15)

"rapes," which he described in his 2007 deposition testimony. Thus, Plaintiffs seek millions of dollars in damages for emotional distress and psychiatric injury, based upon the lone testimony of a minor child concerning events from approximately seven (7) years ago. They seek to do so against LCCYS, for the alleged independent and private actions of another minor child, who was their own relative. No one could have looked into the future to predict the incidents that Plaintiffs allege. This Court must now create new and dangerous legal precedent.

## II.   **PROCEDURAL HISTORY**

On July 26, 2004, Plaintiffs G.Doe,III, and his parents in their own right, K.Doe and G.Doe, filed a Complaint concerning events that all occurred no later than January 19, 2001. (Complaint, ¶26.)   The claims of K.Doe and G.Doe are therefore barred by the statute of limitations. The next day, July 27, 2004, Plaintiffs filed an Amended Complaint. On October 27, 2004, LCCYS filed an Answer, Affirmative Defenses and Cross-Claim against Defendants Institute and Pranzonis. On April 11, 2006, Plaintiffs filed a Second Amended Complaint ("SAC")(Doc.47). On April 28, 2006, LCCYS filed an Answer, Affirmative Defenses and Cross-Claim (Doc.50). On April 30, 2008, discovery closed rendering this case ripe for summary judgment, although the Court continued to resolve discovery disputes and granted leave to conduct the deposition of the former disgruntled employee of the Defendant Institute, Beth Ann DeAngelo. In or around May 2006, Plaintiffs and Defendant Institute settled their claims.

Summary Judgment must be granted pursuant to clear Supreme Court and Third Circuit precedent. The nature of the allegations in state created danger cases, including in this case, are emotional and inflammatory. However, this Court must not extend the narrow exception in the case law and allow sympathy to dictate a decision that Plaintiffs can proceed to trial by jury

against LCCYS.

Plaintiffs cannot substantiate their allegations with admissible record evidence that meets the stringent requirements for holding the government responsible for the unforeseen and unpredictable actions of a seven year-old child.  In denial of their own personal responsibility, Plaintiffs seek to convert an intra-family decision, pursuant to which they knowingly, willingly and aggressively sought custody of their cousin's minor children, who they knew were severely abused and neglected, into a constitutional tort.  To find a constitutional deprivation, this Court would have to find that court-supervised and approved requests of Plaintiffs and their immediate family, in accordance with statutory mandates with which LCCYS complied, create entitlements which render the Defendants *guarantors* against any unsatisfactory outcome, or against these unforeseen circumstances.  Such a result cannot be supported on the basis of the applicable statutory obligations, the facts, or the narrow limits of §1983.

It is "typical with state-created danger cases [that] the facts here are inescapably tragic." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3dCir.,2008).  The Third Circuit has cautioned courts that they must avoid the emotional traps of these types of cases. "Occasionally…the factual situation in which the principle [of adhering to binding judicial precedent] is tested is heartrending, tempting the judge to seek a way to circumvent the principles."  *Bennett v. City of Philadelphia*, 499 F.3d 281, 282 (3dCir.,2007).  "If a municipality, state or other public body is to be liable under the Constitution for harm caused by private parties to persons not in custody, **the liability would be unlimited.  There is no legal doctrine that supports imposition of such liability** … It is not the role of the courts, certainly not the federal courts, to rectify the failures [of social workers] that do happen."  *Id*.  (emphasis added)

The issue here is not whether Plaintiffs have alleged horrific injuries that make them deserving of compensation, but whether they have met the standard for holding state actors liable under the claim that they have been deprived of constitutional rights by virtue of injuries they have received at the hands of a private individual, who was not acting as an agent of or on behalf of the state.  This court's job is to look past the facts and to follow precedent.  *Bennett*, 499 F.3d at 282.

### III.    STATEMENT OF THE FACTS

The facts are more fully set forth in LCCYS' on August 29, 2008 Statement of Undisputed Facts (Doc. 146.)

### IV.    STATEMENT OF QUESTIONS INVOLVED

Whether LCCYS is liable in Count I for allegedly conspiring to place a known sexual "predator" into Plaintiffs' home?  (SAC ¶¶13, 18, 41.)

Whether LCCYS is liable in Count II pursuant to §1983 under a state created danger theory for placing an alleged known sexual "predator" into the Plaintiffs' home? (SAC ¶45.)

### V.    ARGUMENT

Plaintiffs K.Doe and G.Doe  sought custody of N.G. and A.G. with full knowledge of the severe sexual abuse of N.G. by his father, and while being represented by counsel, and after discussion with their immediate family, and after a lengthy formal process involving their own counsel, various child advocates, the foster parents, various court hearings, and approval of the court.  Plaintiffs' characterization of **their own** pursuit of custody as a rogue and conspiratorial **act of the Defendants** aimed at "placing a sexual predator" in their midst (SAC ¶41) has no basis in reality, as the undisputed facts demonstrate.

The process leading to this intra-family transfer did not create a special relationship

between LCCYS and Plaintiffs, and Plaintiffs do not meet the requirements under §1983 jurisprudence for an affirmative act, a deficiency fatal to this claim as a matter of law.  No state actor affirmatively used state authority to create a danger to the Plaintiffs or to cause N.G. to injure them, nor is there any evidence to demonstrate that LCCYS knew of any danger presented by N.G.  Despite the effort to couch Defendants' conduct as action, Plaintiffs' claim boils down to a "failure to act," a "failure to warn," or more pointedly, a "failure to find out and warn." Such an allegation is a negligence claim, not a viable constitutional claim.  Under the applicable standard, the actions of which Plaintiffs complain do not rise to the level of culpability necessary to impose liability.

## A.  SUMMARY JUDGMENT STANDARDS REQUIRE DISMISSAL

Although Plaintiffs will attempt to burden the record with factual assertions, inadmissible statements, *post hoc* hearsay and conspiratorial accusation that have no foundation in admissible evidence, the facts relevant to the procedures leading up to the claimed injuries are not in dispute, making the matter appropriate for summary disposition.   *Nicini v. Morra*, 212 F.3d 798,805-06 (3dCir.,2000).  Furthermore, the Third Circuit has consistently resolved the type of liability claims under §1983 that Plaintiffs advance here summarily, holding it is for the district courts to assess the sufficiency of the evidence in light of appellate pronouncements on the necessary elements of the claim.  *Bennett*, 499 F.3d at 288.  Finally, the factual premise upon which this case is built is not the appropriate vehicle for this District Court to extend the scope of clear appellate precedent to create remedies that the Supreme Court has declined to allow.  *Id.* at 289.

The purposes of summary judgment are to "isolate and dispose of factually insupportable claims or defenses" and to "secure the just, speedy and inexpensive determination of every

action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986). Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 12 F.Supp.2d 391, 398 (M.D.Pa.1998).

The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

The moving party bears the initial responsibility of "stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact." *Andritz Sprout-Bauer, Inc.*, 12 F.Supp.2d at 398. Once the moving party's burden is satisfied, the burden shifts to the nonmoving party, who must demonstrate the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment. *Roginski v. Time Warner Interactive*, 967 F. Supp. 821, 824 (M.D.Pa.1997)(*citing Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3dCir.1990)).

Although Plaintiffs may be entitled to have evidence viewed in the light most favorable to them, the only inferences to which they are entitled are *reasonable* inferences. *See Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

Here, Plaintiffs have not presented any legally cognizable evidence in support of their claims and the evidence in the record is overwhelmingly contrary to the allegations of the SAC that, prior to his placement in the Doe home, N.G. "became a sexual abuser and predator of other children." (SAC, ¶13.) He did not!! There is absolutely no legally cognizable or admissible evidence any where in the record that "All of the defendants knew that N.G. was a sexual

predator, and had previously forced other children to engage in sexual activity." (SAC, ¶18.)

To defeat a summary judgment, the nonmoving party "must proffer evidence to show the existence of **_every_** element essential to its case which it bears the burden of proving at trial." *Moore v. Lehman*, 940 F. Supp. 704, 707 (M.D.Pa.1996)(*citing Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3dCir.1987))(emphasis added). Judgment must be entered for the moving party when the nonmoving party:

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 323-24. As demonstrated below, Plaintiffs cannot establish by competent summary judgment evidence that they are entitled to the relief requested or that a genuine issue of material fact exists for trial.

## B.    DEFENDANTS FOLLOWED PROPER PROCEDURE TO IMPLEMENT THE FAMILY'S DIRECTIVES

LCCYS processed the family's request for N.G. and A.G. to live with them in accordance with clear statutory mandates containing the required legal safeguards. LCCYS operated properly within the confines of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 et seq. (1989), as modified by the Adoption and Safe Families Act (ASFA) in 1997, 42 U.S.C. § 670 et seq. (2007). Under federal law, LCCYS had to appear before the court with sufficient information for the court to make detailed findings on the reasonable efforts to eliminate the children's removal from their immediate family, to reunite the children with their mother, and ultimately ensure a permanent plan for their future. 42 U.S.C. § 671(a)(15)(C). At each hearing, the Master and thereafter the Court had to determine whether the agency had

fulfilled its legal obligations and whether its actions were appropriate based upon the record, a mandate not akin to a "rubber stamp." 42 U.S.C. § 6755)(B).[1]

Pennsylvania's requirements overlay the federally imposed procedural safeguards. 42 Pa.C.S.A. §§6332, 6351. Both federal and state law mandated that LCCYS address a permanent plan for N.G./A.G. after they had been in care for one year. *See* 55 Pa. Code §3130.67. State regulations establish what has been deemed a descending order of preference for a child's permanency plan: (i) return home; (ii) placement in the home of another relative;[2] (iii) adoption; (iv) placement with legal guardian; (v) independent living; and (vi) long term placement. 55 Pa.Code §3130.67. Furthermore, in making any plan for a child, LCCYS was required to identify to the court the type of home or facility in which a child was to be placed, with a discussion of appropriateness, including "how the placement setting is the **least restrictive** – most family-like setting available for the child, consistent with the best interest and special needs of the child." *Id*.(emphasis added). Here, "the child" is N.G. and A.G – not G.Doe,III.

The record demonstrates that before LCCYS arrived at any permanent plan for N.G./A.G. it: (1) provided services to allow the natural mother an opportunity to acquire sufficient parenting skills to qualify for reunification; (2) enabled the foster parents to meet with the

---

[1] See, *Improving Court Practice in Child Abuse and Neglect Cases*, National Council of Juvenile and Family Court Judges, Reno, 1995, Appendix C. www.ncjfcj.orf/vdir/souce.Improving.Implementation;

[2] Plaintiffs' expert Dr. Nunno erroneously asserts that this option caused Plaintiffs to be kinship caretakers so that they should have received certain training. However, the Third Circuit's decision in *Niccini*, 212 F.3d at 813, makes clear that an individual who **volunteers** to accept a child does not receive the same screening or require the same qualifications as a licensed provider. Plaintiffs could not have qualified as kinship caretakers, because Pennsylvania did not have a kinship care program at the time. Such a program in Pennsylvania was not established until 2003. 62 Pa.C.S.A. § 1303. This program formalized the existing preference for placing children with relatives and requires a county agency to "give first consideration to placement with relatives." *Id*.

children's appointed advocate to discuss issues relating to an upcoming Master Review and Court hearing; (3) allowed the foster parents to participate in discussions with the mother, grandmother and LCCYS and Institute caseworkers at which time the family's placement wishes were made clear; and (4) participated in a Masters Hearing along with the children's advocate, Institute Caseworker, mother and grandmother at which N.G.'s behavioral issues were discussed. *See, e.g.,* Luzerne County Court of Common Pleas 5/12/00 Petition For Review Of Placement N.G. and 10/31/00 Petition For Permanency Hearing. The written submissions from the agency to the Master indicate that the Doe family had come forward and requested a placement in their home, but LCCYS took no position on the outcome. *Id.* However, under the previously-discussed regulations, it is clear that the agency and Master had to view the Doe home as the least restrictive setting. 55 Pa. Code §3130.67.

Contrary to the implication in Plaintiffs' pleadings, the record does **not** establish that LCCYS affirmatively sought out Plaintiffs and conspired with the Pranzonis with knowledge, intending to deceive them and place a "sexual predator" in their home. Neither the notes of the permanency hearing nor the Masters Report contain any mention of any predatory behavior, although behavior issues were discussed. Nor has any witness who was present at the hearing testified that any discussion took place regarding N.G. being a "sexual predator." [3]

The placement of the children with the Does was approved in a judicial proceeding, at which a full discussion took place about N.G.'s "recent behavior," and the Court approved the Master's recommendations. *See, e.g.,* Statement of Facts ("SOF") at ¶31. Additionally, the final transfer to the Doe home only occurred after another court proceeding, prior to which the

---

[3] Plaintiffs attempt an end run around this glaring deficiency by pleading purported *post hoc* "admissions" by the Pranzonis, which are actually self-serving hearsay fabricated by K. Doe, to try to prove the existence of a plan to deceive Plaintiffs.

Pranzonis and the Institute's Rick Collins met with the child advocate, discussed the proposed transfer with N.G.'s therapist and requested that the therapist recommend against the transfer. The Pranzonis' objections to the transfer, noted in the record, were not based on N.G.'s behavior but on his stated opposition to living with the Doe Family, and his intense dislike of K. Doe. (*E.g.,* Exh. Araujo 10; Exh. K-Doe 13.)  Neither the advocate, who discussed his client's issues with the therapist, nor the therapist herself, ever counseled against the transfer or warned of any threat posed by N.G.  This was also provided to the Master at the hearing, leading to the Master's final approval which was reviewed by the court and subject to a formal order.  The obvious transparency of this process demonstrates that LCCYS complied with federal and state law, and that a court reviewed the record and made the ultimate decision resulting in the transfer.  Thus, and as more fully set forth below, LCCYS' actions, taken pursuant to and as an integral part of the judicial process, are absolutely immune from liability.  *Briscoe v. LaHue*, 460 U.S. 325, 355 (1983); *Ernst v. C&YS of Chester County*, 108 F.3d 486, 495 (3dCir.,1997).

### C.    COUNT II MUST BE DISMISSED BECAUSE DEFENDANTS ARE NOT LIABLE UNDER §1983

Section 1983 is not a source of substantive rights, but merely provides a "method for vindicating federal rights conferred elsewhere."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  *See also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d.Cir.1997).

To establish a §1983 claim, a plaintiff must demonstrate the two essential elements that: (1) the challenged conduct was committed by a person acting under color of state law, ***and*** (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law.  42 U.S.C. §1983; *Morse*, 132 F.3d at 907; *Wesley v. Dombrowski*, 2004WL1465650 at *4 (E.D.Pa.,2004), (*citing Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1255-56 (3d.Cir. 1994); *Boykin v. Bloomsburg Univ.*, 893 F.Supp. 378, 395 (M.D.Pa.1995), *aff'd*, 91 F.3d

122 (3dCir.1996)(*citing Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).  Plaintiffs were not deprived of any such constitutional right.

A plaintiff in a §1983 action must allege and prove that individual defendants personally performed, directed, or knowingly permitted an illegal act.  *Wesley*, 2004WL1465650 at *4 (*citing Rode*, 845 F.2d at 1207).  Individuals cannot be liable for civil rights violations without either direct involvement in, or knowledge of and acquiescence in, the alleged constitutional violation. *Id.*  A defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach under §1983.  *Id.* (*citing Martinez v. California*, 444 U.S. 277, 285 (1980)).

### 1.    LCCYS Did Not Violate Any Constitutional Rights Of Plaintiffs

To maintain a §1983 claim, Plaintiffs must assert the violation of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law. *Phillips,* 515 F.3d at 235.   *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3dCir.,1984).  After identifying the "exact contours of the underlying right said to have been violated," the court must determine "whether the Plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini*, 212 F.3d at 806.

Here, Plaintiffs allege that LCCYS and the Pranzonis conspired to withhold information from them. (SAC,¶41.).[4]   Plaintiffs conclude that this "conduct and conspiracy…was a deprivation, under color of state law, or rights guaranteed to the plaintiffs under the Fourteenth Amendment to the United States Constitution." (SAC ¶42.)

However, Plaintiffs cannot even establish the existence of a constitutional duty on the part of LCCYS to disclose details of the six (6) purported incidents that occurred prior to

---

[4] Plaintiffs also complain that LCCYS also "actually plac[ed]" N.G. in their household (SAC ¶41).  To the contrary, the Court granted ***Plaintiffs'*** request for custody.  It did so after custody was analyzed through the Interstate process, and New Jersey's DYFS approved it.

November 17, 2000.[5]  Additionally, Plaintiffs cannot show that they had the special kind of relationship with LCCYS from which any duty could arise.  The record is clear that K.Doe and G.Doe requested and aggressively sought custody of N.G. and A.G, not the other way around. (SOF, ¶2.)

Moreover, K.Doe and G.Doe were family members, who were acutely aware of the sexual abuse and neglect of N.G. and A.G, and were in regular communication with the children's mother and grandmother, during which communications they shared intimate details of the family.  (*E.g.,* SOF, ¶¶5, 20, 24, 31-33.)   They repeatedly told both LCCYS and DYFS that were aware of it, while also lying about K.Doe's own sexual abuse as a child.  (SOF, ¶¶5-7, 38, 43, 44-48, 62.)

LCCYS certainly cannot be said to have interfered with familial rights or to have restricted Plaintiffs' access to their relatives and to the free flow of information from those closest to the children concerning the events that brought them under county supervision and continued to play out over time.  Accordingly, no constitutional violation can arise from conduct relating to the withholding of information.

Assuming *arguendo* that any reasonable person could conclude, from these six (6) incidents, that N.G. was a sexual predator, and that he would sexually abuse G.Doe,III, this Circuit has made it abundantly clear that LCCYS has no affirmative duty under the Constitution

---

[5] The six (6) incidents that were purportedly not disclosed by Defendants consisted of the following: (1) on April 11, 2000, the Institute's Rick Collins reported that N.G. followed a girl around at school; (2) on April 13, 2000, the Institute's Rick Collins reported that a teacher saw N.G. touch another male student in the genital area; (3) on June 6, 2000, the Institute's Rick Collins reported that N.G. pulled down his pants in front of a female class mate; (4) on August 18, 2000, C&Y's Olga Araujo reported that Mrs. Pranzoni reported to her that N.G. had sent a note on a piece of cardboard to an adult woman neighbor; (5) on September 27, 2000, N.G. hugged and kissed C&Y's Olga Araujo to greet her during a visit; and (6) on November 14, 2000, Mrs. Pranzoni told Ms Araujo that she had seen N.G. "come out of Jofena's bed" that morning with both children fully clothed.  (SOF, ¶123.)

to protect Plaintiffs.  *Phillips, supra*, 515 F.3d at 235, *citing DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Stone v. Brennan*, 2007 WL1199376*5 (E.D.Pa.,2007)(government has compelling interest in protection of children, particularly where children need protection from own family, which overrides due process rights).  *See also Meyers v. Contra Costa County Dep't of Soc. Serv.*, 812 F.3d 1154, 1158 (9th Cir. 1987).  Such a duty can only arise where the state has affirmatively restrained (in a physical sense) "the individual's freedom to act on his own through incarceration, institutionalization, or similar restraint of personal liberty," creating a "special relationship." *Burella v. City of Philadelphia*, 501 F.3d 134, 141 (3dCir.,2007).  Plaintiffs do not allege that LCCYS restrained them in any way and thus have no basis for asserting any duty on the part of LCCYS to protect them from harm.[6]

      **2.      LCCYS Did Not Violate Any Standard Of Care Applicable To Its Actions In Effectuating The Transfer And Cannot Be Liable Under The State Created Danger Theory**

The Supreme Court has "always been reluctant to expand the concept of substantive due process."  *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992).  In *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), the Court analyzed the level of requisite conduct to give rise to liability on the part of state actors, noting that "the core of the concept [is] protection against arbitrary action."  Under the Court's framework, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Id.* at 846, *citing Collins*, 503 U.S. at 129.  Thus, the Supreme Court speaks of "the cognizable level of executive abuse of power as that

---

[6] The line of cases that addresses the state's duty to those it removes from their parents' protection is factually inapposite to the claims here. *Nicini, supra.  See also, Jackson v. County of Wayne*, 2006 WL 229181 *4 (M.D.Pa.,2006) (state enters into special relationship when it removes child from home and places in state-regulated foster care, giving rise to affirmative duties); *Harris v. Lehigh County Office of C&Y Serv.*, 418 F.Supp. 643, 647 (E.D.Pa.,2005); *K.J. v. Div. of Y&Fam. Serv.*, 363 F.Supp.2d 728, 739 (D.N.J.,2005); *Currier v. Doran*, 242 F.3d 905, 919 (10th Cir.,2001).

which shocks the conscience." *Id.*

The Third Circuit has firmly adhered to this standard in "state created danger cases." *Bennett*, 499 F.3d at 287; *Schieber v. City of Philadelphia*, 320 F.3d 409, 417 (3dCir.,2003); *Nicini*, 212 F.3d at 812. In *Schieber*, the court adopted the following language in *Lewis* as its guidepost in analyzing culpability for §1983 purposes:

> "We have…rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process…. It is, on the contrary, the behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; **conduct intended to injure in some way unjustifiable by any government interest** is the sort of official action most likely to rise to the conscience shocking level…."

320 F.3d at 417-418, quoting *Lewis*, 523 U.S. at 848-49 (emphasis added).

The *Schieber* court reasoned that "more culpability is required to shock the conscience…to the extent the responsibilities of the state actors require a judgment between competing, legitimate interests." 320 F.3d at 419.

In *Schieber*, the Third Circuit reversed the District Court, and refused to hold police officers responding to a 911 call liable for failing to break down the door of an apartment in response to neighbors' reports of screaming for help and of hearing a choking sound behind the door, an action that might have stopped a murder from occurring. The court held that liability could arise only if plaintiffs could establish that the defendants "**subjectively appreciated and consciously disregarded** a great, i.e. more than substantial, risk that the failure to break down Schieber's door would result in significant harm to her," and found that the record could not support such a finding. 320 F.3d at 423 (emphasis added). "[S]hocks the conscience…is a

stringent standard of fault, requiring proof that a municipal actor disregarded **a known or obvious consequence of his action.**"  *Carey v. City of Wilkes-Barre*, 2006 WL 4451561*4 (M.D.Pa.,2006)(citations omitted; emphasis added).

This case falls squarely within the standard set forth in *Schieber*.  As set forth below, the record and state law demonstrate that LCCYS was under a statutory mandate to advance a permanency plan for N.G. and A.G. at the conclusion of 12 months in foster care.  Furthermore, the biological family, and their relatives, K.Doe and G.Doe, were aggressively pressing LCCYS to allow them to obtain custody.  State regulations required LCCYS to provide the "least restrictive" placement.  The statutory and regulatory mandates, at a minimum, demonstrate that LCCYS had to respond to competing interests between the requests of the family and the interests of the children, although its primary obligation was to N.G. and A.G.  Additionally, Pennsylvania law mandates privacy as a matter of course in the operation of services to abused and neglected children.  *See* 23 Pa.C.S.A. §§ 6335, 6336, 6339, 6340.  The statutes do not confer any rights upon the Plaintiffs, even procedural due process rights.

The record demonstrates that N.G.'s foster parents addressed or brought to the attention of his therapist and his guardian *ad litem* any issues relating to his behavior. [7]  (*E.g.*, Exh. K.Doe 16; K-Doe 13.)  Plaintiffs would have the court view those six (6) infrequent incidents reported

---

[7] Plaintiffs also attempt to convert the documentary record by the introduction of purported "admissions" of a scheme to withhold information from the Does.  However, the only evidence derives from a conversation K. Doe self-servingly claims to have had with the Pranzonis after the fact.  Both Pranzonis conclusively testified at their depositions that they had **never been told** by LCCYS not to talk to the Does about N.G.'s sexual activity.  (SOF, ¶131.)  **The LCCYS workers also testified that they never said any such thing.**  (SOF, ¶130.)  Furthermore, prior to the transfer, the Pranzonis claim that they asked LCCYS to make sure that they told the Does everything about N.G., the opposite of any statement of a conspiracy to withhold information. (SOF, ¶133.)  Additionally, the Pranzonis' "understanding" about maintaining confidentiality of a foster child's information did not come from LCCYS but from a "packet" of information they received at the time they became foster parents and in training received from the Institute.  (*E.g.*, M.Pranzoni Tr. at 47; SOF ¶142.)

over the eighteen (18) months in foster care with the Pranzonis, all of which actually occurred between April and November 2000, through the lens of what they allege transpired in *their* home, disregarding lengthy notes recording the observations of those supervising his care.

Not a single document reports the kind of behavior Plaintiffs allege occurred in *their* home.  Not a single person described N.G. as a predator.  Not a single person called him a danger to others, and he lived for 18 months in a home with other children with not a single reported incident of sexual aggression toward those other children.  His therapist, with whom N.G. discussed the incidents in question, to whom he revealed his deepest, darkest secrets, never told LCCYS, or anyone that he should not be placed in any home with other children or that he represented any kind of danger to others.  (*E.g.*, Exh. K.Doe 16; K-Doe 13.)  Nevertheless, Plaintiffs seek to impose liability on Defendants for their inability to predict N.G.'s future behavior – the same failing that Plaintiffs themselves exhibited.  In essence, Defendants should have looked into the future.  The undisputed *contemporaneous* notations (created at a time when neither LCCYS nor the Institute caseworkers had any reason to misrepresent the issues) carefully recorded the care of N.G., making clear that Defendants did not read the tea leaves to predict that N.G. would sexually abuse G.Doe,III or any one else.  Thus, Plaintiffs cannot show that LCCYS "subjectively appreciated and consciously ignored a great, i.e., more than substantial risk." *Schieber*, 320 F.3d at 423.

Significantly, there is no evidence that LCCYS "acted maliciously or possessed any ill will toward" Plaintiffs.  *Sanders v. City of Philadelphia*, 513 F.Supp.2d 439, 447 (E.D.Pa.,2007).  Plaintiffs cannot and will not cite to any cognizable legal evidence of ill will or evil motive.

In fact, Defendants never told Plaintiffs that N.G. was not damaged from his known severe sexual abuse, or suggest that he had completed treatment.  In fact, K.Doe agreed to

16

carefully supervise him and ensure that he continue to receive counseling to deal with the issues relating to his abuse. (SOF, ¶¶ 38, 40, 43, 62.)  LCCYS did not prevent Plaintiffs from obtaining information from the Pranzonis, the therapist, the school, and provided background and contact information for them.  (SOF, ¶¶130-35.)  Certainly Plaintiffs had unfettered access to information through their family members.  Remarkably, even after personally observing conduct evidencing serious disturbance such as nightmares, sleeping unclothed, an erection and non-sexual physical aggression toward her own son, K.Doe ignored the proviso to continue counseling and failed to take steps to seek out such aid.  (SOF, ¶¶ 63, 71, 79, 92, 155.)  She steadfastly disregarded the option of calling the Pranzonis or the therapist in Pennsylvania. (SOF, ¶61, 64, 69, 80-81.)  She failed to even report any of the incidents in her home to LCCYS or DYFS.  (SOF, ¶81.)  Plaintiffs allege that LCCYS, which did not have the same 24/7 contact with N.G. that she had, should have anticipated problems that she, with all her first-hand observations of much more serious behavior, never saw.

Furthermore, where as here, the actions of which Plaintiffs complain had their origin in an interfamily decision with which LCCYS had no involvement and exerted no influence or pressure, this case falls within *DeShaney* and its progeny involving harm suffered at the hands of family members, for which state officials cannot be liable.  *Bennett*, 499 F.3d at 289;  *Ortiz v. NJ Div. of Y&FS*, 2008 WL 1767019, *6-7 (D.N.J.,2008).   Moreover, because LCCYS brought the issues surrounding the transfer to a hearing at which family members, the foster parents, the child advocate, an attorney for Plaintiffs and the caseworkers appeared and/or participated (and Plaintiffs were free to attend), and the court reviewed and approved the disposition, this Court has no basis upon which to conclude that the conduct of LCCYS shocks the conscience.

### 3.    Summary Judgment Must Be Entered Because Plaintiffs Fail To Establish An Affirmative Act

Plaintiffs' theory of liability is inherently fatal to their claims. The pleadings allege a conspiracy to withhold information–an act of omission. [8] Such "failures" do not create actionable liability under §1983. *Sanford v. Stiles*, 456 F.3d 298, 312 (3dCir.,2006). The only claimed "action" is described as "affirmatively placing" N.G. in Plaintiffs' household. While LCCYS did take steps to implement the family's early request to remove the children from foster care to place them with relatives, the description of the process as an "affirmative placement" misrepresents the record and suggests that LCCYS had a role in identifying and seeking out Plaintiffs. The facts are **directly** to the contrary. (*E.g.*, SOF, ¶2-3, 155.)

Here, Plaintiffs came forward on their own, within days of the children's removal from their home. **"A state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice in law must be deemed to be that of the state."** *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). LCCYS did not coerce Plaintiffs to volunteer, nor did it significantly encourage them, rendering the "placement" purely a private matter.

The court must examine the claimed danger (here, the alleged sexually predatory conduct) and determine how it was "created" and whether an affirmative act of the state created it. *Bright*, 443 F.3d at 281. Was N.G.'s alleged propensity to harm others a "state created danger?" Did Defendants' alleged failure to report these six (6) incidents constitute a "state created danger?" The answer to both questions is no.

Here, the reason N.G. came to reside in Plaintiffs' home is the direct result of Plaintiffs' own decision and actions. (*E.g.*, SOF, ¶2-3, 155.) While LCCYS may have assisted in the

---

[8]  Plaintiffs' own expert report contains a laundry list, all of which are ***failures*** to act.

implementation of the decision, its compliance with regulations requiring it to accept the family's request is not an "affirmative act" in this Circuit. *Niccini*, 212 F.2d at 814 (not for court to "second-guess [defendant's] actions from hindsight," especially where objections to placement raised in court). To the extent that the end result of all the procedures put Plaintiffs in the position of having the child, any danger or risk inherent in the transfer was a purely private one unrelated to any action of LCCYS.

### 4.  <u>LCCYS Did Not proximately "Cause" The Alleged Sexual Acts</u>

Plaintiffs also cannot establish a causal relationship between the actions of LCCYS and their injuries. The causation requirement in "state created danger" cases is narrow and strictly construed. *Sanford v. Stiles*, 456 F.3d at 312; *Kaucher v. County of Bucks*, 455 F.3d 418, 434 (3dCir.,2006); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 915-16. Forseeability of harm only arises from "an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of harm." *Phillips*, 515 F.3d at 238. In *Sanford*, as in the instant case, the danger involved latent psychological injuries that rendered a student vulnerable to suicide. After his guidance counselor discussed a recent break-up with him, the student committed suicide, resulting in a federal lawsuit claiming the actions of the teacher precipitated the harm. The court disagreed, rejecting Plaintiffs attempts "to recharacterize [the teacher's] failures as affirmative action." 456 F.3d at 434. Clearly, the actions of the teacher did not cause the underlying suicidal predilections, just as the transfer/placement did not cause N.G.'s behavior once in the Doe home.

N.G.'s behavior was the result of being severely sexually abused by his father, who was K.Doe's relative, and of which Plaintiffs were admittedly well aware of the circumstances and severity of the abuse. (SOF, ¶6-7.)

In *Kaucher*, a corrections officer and his wife alleged that they had contracted an infectious disease as a result of a memorandum issued by prison officials understating the degree of contagion in the prison.  The court determined the danger to be the infectious elements, and asserted that no affirmative act of the state was responsible for that.  The issuance of the memorandum could not give rise to a due process violation because "the memorandum was not the 'but for cause' of the Kauchers' infections… There had always been cases of staph infections at the jail."  456 F.3d at 434.  In this case, the inherent risk of N.G. engaging in sexual behavior predated the transfer of N.G. to the Doe home.

*Morse* involved a claim that a school district should be liable for injuries to a school teacher perpetrated by a mental patient who slipped into the open door of the school and assaulted her.  Plaintiff claimed that the defendant left the back door unlocked which allowed the perpetrator to enter, similar to the claim here.  The court held that the affirmative act of leaving the back door unlocked lacked the necessary **direct** causal relationship to the harm.  132 F.3d at 915-16.

*Sanford, Kaucher* and *Morse* demonstrate that, absent special circumstances not present in a case such as this one involving the familial decision-making process, any attenuation in the causal link is fatal to the imposition of liability under a theory of substantive due process.  These cases contrast with the decision in *Kneipp v. Tedder*, 95 F.3d 1199 (3dCir.,1996).  In *Kneipp*, police officers stopped the plaintiff couple walking home from a tavern for causing a disturbance.  The officers separated the couple, allowing the husband to leave behind his extremely intoxicated wife with the officers.  The officers later let the wife leave unaccompanied.  However, her condition left her unable, without her husband's assistance, to ambulate, resulting in her falling down an embankment, becoming unconscious and suffering

brain damage.  Because the direct intervention of state actors removed her source of assistance, the court found the kind of direct causal link needed to impose liability.  95 F.3d at 1208.

However, *Kneipp* actually demonstrates the deficiency in the causal link in Plaintiffs' claims since, here, K.Doe had immediate concerns about N.G.  He exhibited restless, hyperactive behavior, reported nightmares involving the commission of violent acts, claimed to have slept and insisted on sleeping in the nude, had an erection in front of her and behaved in a very physical manner toward G.Doe,III in full view of K.Doe, and frequently mentioned dreams of cutting of K.Doe's head, causing Plaintiffs to hide all the knives in their kitchen.  (SOF, ¶¶82, 84.)

However, here, unlike *Kneipp*, Plaintiffs cannot establish that it was LCCYS that separated G.Doe,III from his parents' assistance.  (SOF, ¶77.)  In fact, it was not LCCYS; it was K.Doe and G.Doe who did so, and who failed to supervise N.G., and failed to timely get him into counseling.  (SOF, ¶¶63, 77, 79.)  Moreover, Plaintiffs did not report any of N.G.'s conduct to LCCYS or DYFS.  (SOF, ¶81.)

The immediate cause of K.Doe's and G.Doe's failure to protect G.Doe,III was not because of information allegedly deliberately withheld by Defendants, but because of every one's failure to predict the future.  Moreover, once things began to unravel in the Doe home, K.Doe and G.Doe withheld this information from Defendants and from DYFS.  They also failed to seek aid, to request information and to timely schedule counseling.  Although the Pranzonis called regularly, K.Doe never asked them anything about N.G.'s behavior.  In K.Doe's own words, the Pranzonis "were nobody" to her. (SOF, ¶69.)  She felt that what was happening in her home was "none of their business."  *Id.*

Plaintiffs never called N.G.'s therapist and only conceded (despite her prior commitment and a court order) that he needed counseling after things worsened severely.  (SOF, ¶¶ 63, 71,

79, 92, 155.)  As the court held in *Bright*, in the absence of a claim that the defendants restricted Plaintiffs' freedom to act on their family's own behalf, the court cannot impose state-created danger liability on these facts.  443 F.3d at 284.

### D.    SUMMARY JUDGMENT MUST BE ENTERED ON COUNT I FOR CONSPIRACY

The elements of a conspiracy claim under Section 1983 are that: (1) Defendants deprived him of a right secured by the Constitution or laws of the United States; (2) Defendants conspired to do so while acting under color of state law; and (3) specific facts establishing a combination, agreement, or understanding among all or between any of the Defendants to plot, plan, or conspire to carry out the alleged chain of events.  *Gay v. Shannon*, 2005 WL 756731, *8 (E.D.Pa.,2005) (*citing United States, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)); *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa.1999); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001).

In this case, Plaintiffs allege that LCCYS conspired with the Defendant Institute, arguably a state actor through association, and with non-state actors, the Defendants Pranzonis, to conceal information from Plaintiffs.  Specifically, Plaintiffs allege in their SAC:

> 13.    N.G., who had been a victim of sexual abuse, became a sexual abuser and predator of other children.  This fact was well-known to all of the defendants.
>
> *        *        *
>
> The Conspiracy
>
> 18.    All of the defendants knew that N.G. was a sexual predator, and had previously forced other children to engage in sexual activity.  The defendants conspired amongst themselves and others not to disclose to G.Doe II or K. Doe or their family the sexual acts that N.G. had engaged in with other children, or that N.G. was a sexual predator.
>
> 19.    A purpose of defendants' conspiracy was not to "sabotage" N.G.'s chances of being adopted.

These allegations are utterly false.  There is not a shred of evidence any where in the record of them, other than perhaps the self-serving fabricated hearsay testimony of K. Doe, and the hearsay "Declaration" of Beth Ann DeAngelo's, that was manufactured by Plaintiffs' counsel, and which was completely discredited during Ms. DeAngelo's Court-ordered deposition.  N.G. was not a sexual predator, and could not be as a matter of law.  *E.g.*, 42 U.S.C. §5102(g); 23 Pa.C.S. §6331; 42 Pa.C.S. §9795.1  N.G. was only seven (7) years old.  In fact, not one of these six (6) isolated incidents had anything to do with forcing other children to engage in sexual activity.  Not one was a "sexual act" that "N.G. had engaged in with other children."

Furthermore, the record is clear that no one ever conspired to conceal any information from Plaintiffs.  All of the LCCYS Defendants testified that they never told any one not to tell Plaintiffs any information.  (E.g., SOF, ¶¶130-31.)  The Pranzonis also testified that no one from LCCYS ever told them to conceal any information.  *Id.*  The Institute's Rick Collins also similarly testified that there was no any indication between April and November 2000 that N.G. could sodomize or sexually abuse G.Doe,III.  (SOF, ¶¶135.)  LCCYS's Olga Araujo testified that she never told the Plaintiffs about these specific incidents because, either she did not know of them, or there was no information that led her to believe that any individual incident was serious. (SOF, ¶¶ 127-28; *see also* Araujo Tr. at 108.)

Plaintiffs have no independent evidence other than K. Doe's fabricated hearsay notes of an alleged conversation with the Pranzonis, which the Pranzonis unequivocally deny.  *Lyon v. Campbell*, 26 Fed.Appx. 183, 2001 WL 1658895 (4[th]Cir.,2004).  Under FRE 801(d)(2)(E), the alleged statement was not made during the course of the conspiracy and was not in furtherance of it, but subsequent to it.  *U.S. v. Bazemore*, 41 F.3d 1431 (11th Cir. 1994).  Additionally, it does not describe actions that amount to a conspiracy as a matter of law.  *See State v. Tonelli,* 2008

WL 2152528 (Iowa May 23, 2008).  Finally, the bare *post hoc* assertion, standing alone, is insufficient to support a claim for conspiracy.  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Additionally, since the 1970s, it has been "widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious."  *Beck v. Prupis*, 529 U.S. 494, 501 (U.S.,2000).  "A cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. 'Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant.'"  *Pardue v.* Gray, 136 Fed.Appx. 529, 533, 2005 WL 1503917 **3 (3dCir.,2005) (*citing In re Orthopedic Bone Screw Products Liability Lit.*, 193 F.3d 781, 789 (3d. Cir.1999)); *Levin v. Upper Makefield Township, Bucks County, Pa.*, 90 Fed.Appx. 653, 667, 2004 WL 449189 **14 (3dCir.,2004); *Freeman v. Murray*, 163 F.Supp.2d 478, 492 (M.D.Pa.,2001). Section 1983 does not provide a cause of action per se for either a conspiracy or an attempt to deprive one of a constitutional right; without an <u>actual deprivation</u>, there can be no liability under §1983. *Fioriglio v. City of Atlantic City,* 996 F. Supp. 379, 385-86 (D.N.J.,1998); *Defeo v. Sill*, 810 F. Supp. 648, 658 (E.D.Pa.,1993).

Accordingly, because there is no underlying violation in Count II, Count I for conspiracy must be dismissed.

### E.    SUMMARY JUDGMENT MUST BE GRANTED ON PLAINTIFFS' *MONELL* CLAIMS UNDER §1983 BECAUSE PLAINTIFFS HAVE FAILED TO SHOW ANY POLICY OR CUSTOM.

Plaintiffs allege custom or policy liability against LCCYS in ¶¶30-34 of the SAC. LCCYS is entitled to summary judgment as to Plaintiffs' §1983 claim because they have not established municipal liability as required by *Monell v. City of New York Department of Social*

*Services*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court held that traditional concepts of *respondeat superior* do not apply to actions brought under §1983. *Id. See also Jett v. Dallas Independent School District*, 491 U.S. 701, 736 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988).

Because *Monell* rejected government liability based on the doctrine of *respondeat superior*, a government body may be liable only for conduct that implements a policy, decision, or custom of government, when they may fairly be said to represent official policy. *Id.* at 694. A custom may form the basis of a §1983 claim even though it has not been formally approved, provided that it is so permanent and well settled as to constitute a custom or usage with the force of law. *Young v. City of Philadelphia*, 1996WL287315 *4, (E.D.Pa.,1996). A plaintiff must show that a policymaker for the local government authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence. *Id.* (*quoting Baker v. Monroe Township*, 50 F.3d 1186, 1191 (3dCir.1995). Finally, a plaintiff must present some "scienter-like evidence" with respect to the policymaker. *Id.* (*quoting Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3dCir.1991), *cert.denied*, 503 U.S. 985 (1992)).

Municipal liability under §1983 will attach only where a deliberate choice to follow a course of conduct is made from among various alternatives. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the Plaintiff must show that the policy itself is unconstitutional. *See Gabrielle v. City of Plain*, 202 F.3d 741, 745 (5th Cir., 2000).

In this matter, Plaintiffs have failed to produce any evidence to prove the existence of a custom or policy authorized or acquiesced in by LCCYS. Here, there is no policy or custom. These were individual judicial proceedings concerning two individual children, N.G. and A.G.

**F.    SUMMARY JUDGMENT MUST BE ENTERED BECAUSE LCCYS IS IMMUNE**

**1.    LCCYS Is Entitled To Absolute Immunity**

As set forth above, Plaintiffs fail to satisfy the requisites of substantive due process because their alleged injuries resulted from the actions of a private individual, N.G., for which government actors cannot be held liable.  Only if this Court determines that Plaintiffs have satisfied each and every element for such a claim, and that sufficient evidence of a constitutionally cognizable deprivation exists, must the Court proceed to consider whether defendants are entitled to immunity for their actions.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Miller v. City of Phila.*, 174 F.3d 368, 374 (3dCir.,1999).

Plaintiffs' convoluted causal chain necessarily leads to the propriety of the actions surrounding the decision to approve the transfer of N.G. and A.G. into the custody of K.Doe and G.Doe.  Seeking an attenuated link, Plaintiffs claim that if LCCYS had told them about these six (6) incidents, they would have changed their minds about seeking custody of N.G., and no contact between N.G. and G. Doe III would have occurred, which therefore makes LCCYS responsible.[9]

The record demonstrates that LCCYS prepared an application to the Court to conduct proceedings to adopt a permanent plan for N.G., which included a Masters' Hearing, followed by a Masters' Report and Recommendation and Court Order.  (*See, e.g.,* SOF, ¶36; *see also* Luzerne County Court of Common Pleas 5/12/00 Petition For Review and 10/31/00 Petition For Permanency Hearing.)   At the May 25, 2000 hearing, for example, N.G.'s recent behavior was

---

[9] To the contrary, K.Doe and G.Doe would not have changed their minds, because they wanted to adopt a girl, namely A.G.  They wanted A.G. so badly, that they were willing to lie to LCCYS and DYFS to get her, by concealing the extensive sexual abuse that K.Doe suffered as a child and teenager, and by failing to report the escalating incidents involving N.G. occurring in their home between November 17, 2000 and January 17, 2001.

discussed with the Court, the master, the child advocate, the Institute, the C&Y worker, the C&Y supervisor, and with Regina and Mary Lou, N.G.'s grandmother and mother, who were also Plaintiff's relatives, **and who were in direct communication with K.Doe.** (*E.g.,* SOF, ¶¶20, 24, 31-33.)

LCCYS did not "place" N.G. and A.G. with the Does. The Court did. Any plan adopted in the course of these proceedings represents a court disposition and the actions of the LCCYS in participating in those proceedings are covered by absolute immunity. *Ernst v. County of Chester*, 108 F.3d 486, 493 (3dCir.,1997)(social workers entitled to absolute immunity for actions in "petitioning and in formulating and making recommendations to state court"); *Meyers*, 812 F.2d at 1159 (social workers absolutely immune in performance of duties authorized by statute). The *Ernst* court reasoned:

> Because CYS caseworkers are directly responsible for the recommendations made to the court in dependency proceedings, their actions in determining those recommendations and communicating them to the court are 'intimately associated" with the judicial process …

108 F.3d at 496. In *Ernst*, the court expressed concern over workers being forced to defend their actions years after they occurred when they have responsibility for hundreds of case. *Id*. at 497. *See also Williams v. Consovoy*, 453 F.3d 173, 178 (3dCir.,2006).

Accordingly, all claims against LCCYS must be dismissed.

### 2.    LCCYS Is Entitled To Qualified Immunity

LCCYS performed its primary duty to develop and implement a permanent plan for N.G./A.G. within the statutory mandates. The record fails to demonstrate that the actions they took violated "clearly established statutory or constitutional rights of which a reasonable person should have known." *Hope v. Pelzer*, 536 U.S. 730 (2002). Where the record establishes that

government actors complied with clearly established laws, they are entitled to a defense of qualified immunity. *Colon v. Colonial Intermediate Unit*, 443 F.Supp.2d 659, 669-70 (M.D.Pa.,2006).

LCCYS indisputably complied with federal and state laws and regulations in handling N.G.'s case; they responded promptly to the reported abuse and to his subsequent allegations involving his brother, complied with statutory mandates regarding dependency hearings, and followed regulatory guidelines in seeking permanency for the child.  Furthermore, as Judge Caputo of this District has concluded, "the Third Circuit did not recognize that state agencies enter into a special relationship with children in foster care, and may be liable under Section 1983 if they fail to meet certain affirmative duties [**to the** children] arising out of this relationship, until 2000." *Behm v. Luzerne County Children & Youth*, 172 F.Supp.2d 575, 587 (M.D.Pa.,2001).  If the law did not establish such a duty to the children themselves prior to that time, it certainly was not "clearly established" that Defendants owed any duties to persons in placement homes.

Plaintiffs would have the court look behind these immediate parameters and impose liability based upon non-existent duties to persons outside Defendants' immediate scope of responsibility.  The mere availability of "state created danger" causes of action does not convey to Plaintiffs "established" rights of which Defendants should have known.  Was it "clearly established" that prospective family members, who volunteered and aggressively demanded custody of sexually abused relatives, represented their intimate familiarity with the family history and details of the abuse, could fail to have sufficient skill, intelligence and preparation to monitor and protect their own family members from latent effects of sexual abuse leading to increasingly threatening behaviors?  In the context of their duty to protect the best interest of

N.G. and A.G., is it reasonable for Defendants to have known that fulfilling this duty might eventually cause Plaintiffs injury of constitutional magnitude?

Where, as here, Defendants followed state and federal requirements in effectuating the transfer of N.G. and A.G., it is not objectively reasonable to assert that their conduct clearly violated established law.  *Savard v. Rhode Island*, 338 F.3d 23, 27 (1stCir.,2003).  Inherent reasonableness is a question of law for the court, not a factual issue subject to dispute.  *Scott v. Harris*, __ U.S. __, 126 S.Ct. 1769, 1773 (2007); *Larsen v. Senate of Com. of Pa.,* 154 F.3d 82, 87 (3dCir.,1998).  Pennsylvania's dependency regulations do not require training or licensing family members prior to approving them as caretakers.  In construing this placement as the "least restrictive" alternative, the Master understood that the Does offered no specialized qualifications to assume custody.  It was precisely the lack of institutionalization that mandated their selection.  For this Court to impose duties and burdens upon the state to render the family competent to assume care is precisely the kind of state interference into intrafamilial decision-making that the statutory scheme prohibits.

The Supreme Court has made clear that, in this area of the law, it is loath to impose such limitations by virtue of potential liability on the actions of the state as to prevent it from carrying out its duties.  *Scott*, 126 S.Ct. at 1779.  Furthermore, the Third Circuit has held that "our qualified immunity analysis 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  *Egolf v. Witmer*, 526 F.3d 104, 2008 WL 2151823*6 (3dCir.,2008)(citation omitted).  It has further recognized that "what exactly constitutes a clearly-established right in the context of social workers' investigation allegations of child abuse is a difficult question."  *Puricelli v. Houston*, 2000 WL 760522 *8 (E.D.Pa.,2000).  *Puricelli* recognizes the necessary balance between the family's interest (i.e.

that of the G. family) and the state's interest in protecting children. The interests of the Does lie well outside the scope of the state's concerns in protecting N.G. The rights of the Does to detailed reports in the context of volunteering to serve as a placement for their own family members was not clearly established. *Blackhawk v. Com. of Pa.*, 225 F.Supp.2d 465, 480 (M.D.Pa.,2002). Indeed, Pennsylvania law mandates privacy for abused and neglected children such as N.G./A.G. *See* 23 Pa.C.S.A. §§ 6335, 6336, 6339, 6340. Accordingly, Plaintiffs cannot demonstrate a clearly established right in the context of the underlying proceedings and the individual defendants are entitled to qualified immunity from suit for these claim.

### G. COUNT THREE MUST BE DISMISSED AGAINST LCCYS

To the extent that Plaintiffs assert that Count Three alleges a claim against LCCYS, it must be dismissed. Count Three fails to mention LCCYS, and only mentions the Defendant Institute and the Defendants Pranzonis. "The omission of a defendant's name from the material allegations of a complaint justifies dismissal of the Complaint against that defendant." *Whittington v. Vaughn*, 289 F. Supp. 2d 621, 628 (E.D.Pa.,2003)(citing *Marvasi v. Shorty*, 70 F.R.D. 14, 22-23 (E.D.Pa.,1976). *See also C.H. ex. Rel. Z.H. v. Olivia*, 226 F.3d 198, 210-202 (3dCir.,2000), *cert. denied Hood v. Medford Twp. Bd. of Education*, 533 U.S. 915 (2001); *Breslin v. City and County of Philadelphia*, 92 F.R.D. 764 (E.D.Pa.,1981).

### H. THE STATUTE OF LIMITATIONS BARS ALL CLAIMS BY K.DOE AND G.DOE

This Court must apply the most analogous limitations period of the state in which the claim arose. *Wallace v. Kato*, ___ U.S. ___, 127 S.Ct. 1091 (2007); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-61 (1987). A state's personal injury tort limitations period governs claims under §1983. *Goodman*, 482 U.S. at 661; *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 24 (2005); *Wilson v. Garcia*, 471 U.S. 261, 271-75 (1985). Here, Pennsylvania's two-year

personal injury statute of limitations governs §1983 claims.  *Ormsby v. Luzerne County Dep't of Pub. Welf.*, 149 Fed.Appx. 60, 62, 2005 WL 218475 (3dCir.,2005);  *Schneck v. Saucon Valley School District*, 340 F.Supp.2d 558, 569 (E.D.Pa.,2004).[10]

Plaintiffs assert that LCCYS deprived them of constitutional rights by withholding information from them (SAC ¶41).  The "actions" of the defendants of which they complain, are omissions, that occurred no later than January 17, 2001, when their alleged injuries manifested themselves.  If the claims were not obvious on January 17, 2001, they certainly were when K. Doe wrote the following entry in her notes dated June 12, 2001:

> I hate the state of Pennsylvania and Aunt Regina and Mary Lou. How dare Children + Youth not tell me what he was capable of doing!  How could they put my family in danger?  How?  How? How?  Why?  Why? Why?

(K.Doe-21, at p. 23.)  See also K.Doe. Tr. at 398.

Plaintiffs filed their Complaint over three years later, on July 26, 2004, well beyond the two year statute of limitations.  *Ormsby, supra.*  Any claims by the adult Plaintiffs, K.Doe and G.Doe, are therefore barred.  42 Pa.C.S.A. §5574.

## V.    CONCLUSION

For all the foregoing reasons, summary judgment must be entered in favor of LCCYS.

---

[10] Nothing in the record provides any basis for expanding the limitations period.  Recently, the Supreme Court addressed the issue of whether the accrual date of a §1983 cause of action is a question of federal law, and held that the issue is governed by federal rule conforming in general to common-law tort principles.  *Wallace*, 127 S.Ct. at 1095.  It further adopted the "'standard rule that [accrual occurs] when the plaintiff has a "complete and present cause of action..."' that is, when 'the plaintiff can file suit and obtain relief.'"  *Id.* (citations omitted).  Accrual occurs "when the plaintiff knows or has reason to know of the act which is the basis of the claim." *Rodriguez-Garcia v. Caguas*, 354 F.3d 91, 96-97 (1stCir.,2004); *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2dCir.,2002)  Furthermore, "in assessing the applicable date, the Supreme Court 'takes a hard line on when civil rights claims for relief accrue.  If there is more than one plausible alternative, the Supreme Court appears to be strongly inclined to pick the earlier date.'"  *Jonker v. Kelley*, 268 F.Supp.2d 81, 85 (D.Mass.,2003)(citations omitted).

LCCYS did not act intentionally, and did not create any danger to Plaintiffs.  The record fails to support the requisite elements to raise a factual issue as to Plaintiffs' ability to impose liability for alleged constitutional deprivations because their injuries took place at the hands of a private individual.

Respectfully submitted,

ELLIOTT GREENLEAF
    & SIEDZIKOWSKI, P.C.


*/s Timothy T. Myers*

JOHN G. DEAN                          TIMOTHY T. MYERS
PA 76168                              PA46959
PNC Bank Bldg, Suite 202              DEBORAH H. SIMON
201 Penn Ave.                         PA 32459
Scranton, PA 18501                    Union Meeting Corporate Center V
570-346-7569                          925 Harvest Drive
jgd@elliottgreenleaf.com              Blue Bell, PA 19422
                                      215-977-1000
                                      ttm@elliottgreenleaf.com


DATED: August 29, 2008

## CERTIFICATE OF COMPLIANCE

I, Timothy T. Myers, Esquire hereby certify that this Brief complies with the requirements of this Court's August 12, 2008 Order (Doc. 139) concerning the length of this brief. The Brief contains 9,982 words of text, excluding headings, tables and certifications, as counted by the word-processing software system used to prepare this Brief.

/s Timothy T. Myers
Timothy T. Myers, Esquire

## CERTIFICATE OF CONCURRENCE

I, Timothy T. Myers, Esquire, counsel for the LCCYS Defendants, hereby certify that the parties have conferred and that no parties have concurred.

 s/    Timothy T. Myers
Timothy T. Myers

DATED:  August 29, 2008